**UNITED STATES of America ex rel. Thomas N. COLE, Relator-Appellant,**

v.

**Vincent R. MANCUSI, Warden of Attica State Prison, Attica, New York, Respondent-Appellee.**

**No. 797, Docket 34613.**

United States Court of Appeals, Second Circuit.

Argued May 27, 1970.

Decided July 16, 1970.

Samuel W. Murphy, Jr., New York City, for relator-appellant.

Michael Colodner, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen., of the State of New York, and Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, of counsel), for respondent-appellee.

Before WATERMAN, FRIENDLY and HAYS, Circuit Judges.

FRIENDLY, Circuit Judge.

Thomas N. Cole was convicted in May 1967 in the County Court of Monroe County, New York, of committing grand larceny upon the Carpenter Shoe Co. in Rochester. In November 1964 he had been indicted, along with James and Clara Slater, on this charge and others. A conviction on the other counts of the indictment in February 1965 was reversed on the ground that his case should have been severed to protect him from the adverse effect of statements to the police by the Slaters which implicated him in the crime. People v. Cole, 26 A.D.2d 896, 274 N.Y.S.2d 378 (4th Dept. 1966). In September 1965, he and James Slater were tried on the instant count and convicted, but his conviction was reversed because of the prejudicial effect of a statement by Slater, despite a redaction which was held ineffective. People v. Cole, 27 A.D.2d 794 (4th Dept. 1967). In 1967 he was again tried and convicted on this count; the Appellate Division affirmed and leave to appeal to the Court of Appeals was denied.

Cole then filed a petition for habeas corpus in the District Court for the Western District of New York. He asked that counsel be assigned and an evidentiary hearing held. Considering that the state record and briefs enabled him to dispose of the case, Judge Burke denied these requests and made findings of fact and conclusions of law that the petition should be denied. We granted a certificate of probable cause.

At the trial three witnesses from Carpenter Shoe Co. testified to the robbery by two men on Friday, October 16, 1964, of a cash payroll of $2553.34 enclosed in a bank money pouch, along with a bank book in which delivery of the payroll had been recorded. The witnesses were unable to identify the robbers since the men were wearing ski-masks. Within a few hours the police went to a five-apartment building at 19 Savannah Street in Rochester, where Cole, Joan Wright and their child lived in one apartment and Mr. and Mrs. Slater and their child in another. Only the two women were

at home. The apartments were searched, but nothing was seized. On October 17, the police asked the women to come to the station house and there questioned them. The next day the women were again called in and questioned. This time the police obtained from each a written consent to "a complete search of my residence." According to the testimony of a detective, of which more hereafter, Clara Slater took him to an attic used by all residents for storage purposes and handed him a shopping bag containing the Carpenter Shoe Company's bank book, a money pouch from the same bank, and various articles of clothing including two ski masks. That evening the police got word that Cole and Slater were at home. They found Cole on the roof, daring the police to come and get him. They did. Cole was searched at the police station, and a total of $1188.35 was found on his person, including a package of twenty-five one dollar bills in a wrapper which fell from his shorts. In addition to these facts the prosecution offered the testimony of Joan Wright that she had heard Cole and Slater plan the robbery. The defense put on one witness to attack her character and another, a lawyer, who testified that Cole had given him four or five hundred dollars for safekeeping, which he had returned shortly before October 18, 1969. Cole did not testify.

Although other issues were raised at earlier stages of this case, these have been limited, with petitioner's consent, to a complaint that the court's charge violated his Fifth Amendment privilege, a contention that the search violated his Fourth Amendment rights, and a claim, related to the second point, that the court should have held a hearing and appointed counsel. We shall consider them in that order.

I.

The portion of the charge of which Cole complains is as follows:

Now, I charge you that under our law where one is found in exclusive possession of stolen property within a reasonably short time after the theft, the law creates an inference of fact that his possession is guilty and places upon him the burden of explaining it satisfactorily. And so, if the proof satisfies you beyond a reasonable doubt that this defendant had recent and exclusive possession of the fruits of the theft and that such possession now remains unexplained, you, as the jury, will be justified in drawing an inference or conclusion of fact that he is the man who actually committed the crime, for the resort to falsehood and evasion by one accused of a crime, affords an assumption of evil intention and may be considered as evidence bearing upon the guilt or innocence of the accused.

Now, this is not to say that this defendant has any burden of proving anything whatsoever, it is up to the People and it is theirs, the People's, duty to prove the defendant's guilt beyond a reasonable doubt and that burden never shifts to the accused. The defendant always has an opportunity to explain exclusive possession of recently stolen property and if the evidence satisfies you beyond a reasonable doubt that the defendant in this case has failed to use that opportunity, you may draw an inference of fact from that set of affairs that he is the person who stole or withheld the property.

Remember, however, that you may not draw any inference of guilt from the defendant's failure to take the stand; all I do is state that you may draw an inference of guilt from the possession of articles recently stolen which has not been explained at all.

At the conclusion of the charge a colloquy between defense counsel and the court took place in the presence of the jury:

Mr. Franzen: Your Honor, I have one exception to the Court's charge with reference to the duty or obligation as to the law as the Court gave it, the defendant to explain away pos-

session. Outside of that I have one request.

The Court: You take exception * * * I don't think I charged that he had a duty to explain it away, I specifically stated he may be silent on that and that that was not to be considered.

Mr. Franzen: I'm sorry, I misunderstood the charge.

The Court: At any rate, you wish to except to the charge, that portion as to explaining away the possession?

Petitioner's contention that the charge constituted a comment on his failure to testify, forbidden by Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L. Ed.2d 106 (1965), involves a phase of the familiar tension between that principle and the right of the prosecution to have the jury's attention directed to probative elements in its case. See United States ex rel. Leak v. Follette, 418 F.2d 1266 (2 Cir. 1969). It is old law that "Possession of the fruits of crime recently after its commission justifies the inference that the possession is guilty possession, and, though only *prima facie* evidence of guilt, may be of controlling weight unless explained by the circumstances or accounted for in some way consistent with innocence." Wilson v. United States, 162 U.S. 613, 619, 16 S. Ct. 895, 898, 40 L.Ed. 1090 (1896). Moreover, as we have recently reaffirmed, United States v. Coppola, 424 F. 2d 991 (2 Cir. 1970), such possession justifies an inference not merely of guilty knowledge but of participation in the theft. The Fifth Amendment difficulty springs from the qualification "unless explained," etc. Although this was undoubtedly designed for the benefit of the accused in order to avoid the jury's concluding that the inference was irrebuttable, it entails the danger of inviting the jury's attention to a forbidden subject. The judge can somewhat lessen this by being careful to speak of the "evidence in the case," see United States v. Gainey, 380 U.S. 63, 71 n. 7, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965), and sedulously avoiding any reference to the defendant's having to present such evidence—however unrealistic it may be to suppose that a distinction given such importance in appellate arguments plays much part in the jury room.

■ Cole's assigned counsel in this court stresses portions of the charge he considers to have crossed the allowable line. To begin, the judge said the law "places upon him [Cole] the burden of explaining it satisfactorily." Even though the judge did not say that Cole must give the explanation and subsequently used the neutral phrase "remains unexplained," this sentence would be bad if it stood alone since it could be taken to indicate that the prosecution had shifted the burden of proof. But later the judge made it clear that "no defendant has any burden of proving anything whatsoever." Counsel is also critical of the reference to "falsehood and evasion," which we agree would better not have been made. However, "falsehood" could not have been taken to refer to Cole's failure to testify, and we doubt that "evasion" would have been. If the jury gave any effect to this single word, that was more likely to have been with regard to the explanation attempted by the testimony of the lawyer called by the defense, and whether this was proper or not, it had nothing to do with Cole's Fifth Amendment privilege. Moreover, if specific exception had been taken to this language, the judge would doubtless have corrected it. Greatest stress is placed upon the sentence beginning, "The defendant always has an opportunity * * *." This might again be subject to criticism if it stood alone, but the judge drew the sting by the very next sentence where he admonished the jury not to "draw any inference of guilt from the defendant's failure to take the stand," a point already stressed at the beginning of the charge and again emphasized in his colloquy with defense counsel in the presence of the jury, and explained that "all" he was stating was that the jury might draw "an inference of guilt from the possession of articles recently stolen which has not been ex-

plained at all." The instruction was certainly not a model, but, when all is said and done, the case does not differ essentially from United States v. Armone, 363 F.2d 385, 391–393 (2 Cir.), cert. denied, 385 U.S. 957, 87 S.Ct. 398, 17 L.Ed.2d 303 (1966), where we held that a charge using the words "unless he [the defendant] has given you a satisfactory explanation of his possession," was cured by a later instruction that no inference could be drawn from failure to take the stand—or, for that matter, from United States v. Gainey, *supra*, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658, itself. See also Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), where, as appears from the dissenting opinion of Mr. Justice Black, 396 U.S. at 433, 90 S.Ct. at 660 the judge instructed that evidence of possession of narcotics should be deemed sufficient to convict "unless the defendant explains the possession to the satisfaction of the jury." [1]

## II.

Before Cole's trial began, the state judge conducted a hearing with respect to the search. George DeVos, a detective supervisor, testified that he saw Miss Wright and Mrs. Slater sign consents on October 18; that he accompanied the women to the Savannah Street building; that Clara Slater volunteered "I know what you are here for, if you will follow me, I'll show you what you want"; and that she then took him to the attic and pulled out a large shopping bag with the incriminating contents described above. Joan Wright testified she had voluntarily signed a consent, but was confused about whether or not she was present at the search. Cole's attorney cross-examined her concerning testimony she had given at the February 1965 trial to the effect that the police officers had threatened her and Mrs. Slater with separation from their children unless they talked and that "I didn't give nobody no right to go through none of my apartment." She repudiated this. Albert Del Monte, a detective, testified that he interviewed the two women at the station house on October 18, that they were cooperative, and that they were not subjected to any threats or coercion before signing the consents. He confirmed Detective DeVos' account of Clara Slater's having pointed out the shopping bag in the attic. George McDonald, another detective, testified to the absence of threats or coercion when the consents were signed. Cole's trial counsel offered no witnesses. Upon this evidence the state judge found that the search was the "result of duly executed consents given without coercion, threats or promises."

■ Cole's counsel on this appeal vigorously attacks this finding. He relies on the contrary testimony of Miss Wright and Mrs. Slater at the earlier trial and attributes the change in Miss Wright's story to an alteration of her sentiments toward Cole as a result of an intervening marriage to another man. The Attorney General responds it is just as likely that Miss Wright lied in 1965 to protect her lover and notes the failure of the defense at the 1967 hearing to call Mrs. Slater, who was not shown to be unavailable, in order to rebut the testimony of the detectives. Be all this as it may, the issue of credibility was preeminently for the state judge who saw and heard the witnesses, 28 U.S.C. § 2254(d). Accordingly appellant can pre-

---

1. Defense counsel also mentions that it is "at least questionable" whether the charge allowed the jury to draw an impermissible inference since, in his view, there was no evidence that the bills found on Cole were those stolen from the bank. However, Cole's possession of a large sum of cash, with twenty-five one dollar bills concealed in his shorts, was sufficient to make the inference applicable. Moreover, the over-whelming evidence that Cole was the robber also tended to show that the money he was carrying belonged to the bank. While this may have made the inference from recent possession superfluous, it certainly does not render the inference impermissible. Doubtless for this reason no objection on this ground was made in the state court—an additional basis foreclosing consideration of the point here.

vail on this issue only if the absence of warnings to the two women that they were not bound to consent to a search, or the giving of consents while they were at a police station, or the combination of the two, invalidates the consents as a matter of law.

■ In United States ex rel. Combs v. LaVallee, 417 F.2d 523, 525–526 (2 Cir. 1969), this court refused "to adopt a rule that a search is per se invalid unless it is preceded by warnings as to fourth amendment rights." However, Combs' mother gave her consent while at home and not in a police station. In United States ex rel. Lundergan v. McMann, 417 F.2d 519, 521–522 (2 Cir. 1969), we recognized the possibility that the Supreme Court might require some type of warning "at least with respect to persons in custody." But, passing the point that it is not clear whether the two women were in custody when they gave the consents, we also said in *Lundergan* that we would not expect any such newly prescribed rule to apply to cases where the conviction had already become final. We adhere to that view.

### III.

■■ Petitioner's final point is that the time has come for us to go beyond United States ex rel. Wissenfeld v. Wilkins, 281 F.2d 707 (2 Cir. 1960), with respect to requiring the assignment of counsel in the district courts for state prisoner habeas corpus petitioners. In view of the increase in such petitions (on a nation-wide basis) from less than a thousand in 1960 to 7359 in 1969, see Ann.Rep. of the Director of the Administrative Office of the United States Courts, 1969, pp. 141–42, and the lack of merit in the overwhelming bulk of them, we could not justify any such imposition on the bar. The need for counsel in the district court exists primarily when the judge's investigation shows that an evidentiary hearing is required or desirable. In this case, correctly in our view, Judge Burke saw no reason why Cole who had already had such a hearing in the state courts, in which he had been aided by counsel, should have another.

The court is indebted to Samuel W. Murphy, Esq., of the New York bar, for exceptionally able briefs and argument on Cole's behalf.

Affirmed.