785 F.2d 309
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
JONATHAN LEE LAMPKIN, Petitioner-Appellant,
v.
R. C. MARSHALL, SUPERINTENDENT, Respondent-Appellee.
 85-3371
 United States Court of Appeals, Sixth Circuit.
 1/3/86
 
 BEFORE: MILBURN and GUY, Circuit Judges; and WOODS, District Judge*.
 PER CURIAM.
 
 
 1
 Petitioner-appellant Jonathan Lee Lampkin appeals the decision of the district court denying his petition for a writ of habeas corpus under 28 U.S.C. Sec. 2254. For the reasons that follow, we affirm.
 
 I.
 FACTS
 
 2
 On November 16, 1979, Ashtabula City police officers were summoned to the residence of Mrs. Williams on West 43rd Street in Ashtabula, Ohio. The officers found that Mrs. Williams, an elderly woman, had been robbed, beaten, and killed. A neighbor informed police that she had seen a tall, thin, black youth, known as Tuto, raking leaves in the victim's yard earlier that day. The police officers, who had had prior dealings with petitioner, recognized him by description and nickname.
 
 
 3
 The officers went to petitioner's residence, where his mother advised the officers that he was at a nearby car wash. Petitioner's mother also told police that when he left home that morning he was wearing blue jeans, a T-shirt, and sneakers. Upon arrival at the car wash, the officers observed petitioner dressed in a velvet suit. Upon seeing the police, petitioner fled on foot, eluding the officers.
 
 
 4
 The officers then returned to petitioner's residence and received permission from his twenty year-old sister to search for the clothing petitioner had worn earlier that day. The search uncovered a pair of bloodstained blue jeans.
 
 
 5
 At approximately 1:00 a.m. on Monday, November 19, 1979, petitioner, accompanied by an attorney, James Timonere, and by a Rev. Fleming, voluntarily appeared at the Ashtabula police station. Mr. Timonere, who had represented petitioner on a previous occasion, had recently been elected the City Solicitor for the City of Ashtabula, but had not yet been sworn into office. Petitioner's surrender was the result of negotiations with Mr. Timonere and Rev. Fleming.
 
 
 6
 Petitioner testified that upon his arrival at the police station he was questioned by Detective Sergeant Pete and Captain Lambros. According to petitioner, the officers advised him that they possessed his blood-stained jeans and asked whether one of his two friends had committed the killing. Petitioner testified that he requested Mr. Timonere to check the pants for blood stains and that Mr. Timonere left the room. Petitioner testified that upon his return to the room, Mr. Timonere told him that there was blood on the clothing and advised him to turn state's evidence.
 
 
 7
 Petitioner testified that at this point in the interrogation he was advised of his Miranda rights and that he signed a waiver of rights form. According to petitioner, he then asked Mr. Timonere to be his attorney, and Mr. Timonere answered 'No.' Petitioner further testified that his subsequent request for an attorney was denied. Petitioner then gave a written statement implicating himself as an aider and abettor to the murder.
 
 
 8
 Petitioner's version of the facts is contradicted by the testimony of Captain Lambros and Detective Sergeant Pete. The two officers testified that petitioner was arrested and informed of his Miranda rights prior to any questioning and that petitioner did not request an attorney at any time. Petitioner's version is also contradicted by the testimony of Mr. Timonere. Mr. Timonere testified that petitioner was informed of his rights prior to questioning and that petitioner did not request an attorney. Mr. Timonere also testified that he told petitioner that if he had anything to worry about, then he should be quiet.
 
 
 9
 The next day, Tuesday, November 20, 1979, petitioner insisted on talking with either Detective Benedict or Detective Sergeant Pete. The officers read petitioner his Miranda rights, and petitioner again signed a waiver of rights form. The officers then told petitioner that the two friends had passed a polygraph test that morning. Petitioner then gave a statement that he had taken money from the victim's purse and that when she surprised him, he killed her. The statement was in writing and signed by petitioner. That afternoon, the same two officers were transporting petitioner to the emergency room of a local hospital when petitioner reportedly asked how much time he would get for the killing.
 
 PROCEDURAL HISTORY
 
 10
 Petitioner was indicted by the Ashtabula County, Ohio, grant jury on one count of aggravated murder and one count of aggravated robbery. Petitioner entered pleas of not guilty to each count in the indictment. After a full evidentiary hearing, the trial court denied petitioner's motion to suppress the two written statements. The trial court specifically found that upon petitioner's arrival at the police station he was advised of his Miranda rights and indicated that he un erstood them. The trial court further found that petitioner did not indicate a desire to remain silent or to have an attorney present. Finally, the trial court concluded that petitioner was advised that Mr. Timonere could not be his attorney and that if he had anything to hide, he should remain silent. The case proceeded to trial, and petitioner was found guilty on all charges.
 
 
 11
 Petitioner appealed his conviction to the Ohio Court of Appeals alleging that the trial court's refusal to suppress the two written statements constituted prejudicial error. Petitioner contended that the statements were involuntary and that they were taken after petitioner requested counsel and before counsel was provided. The Ohio Court of Appeals dismissed the contention and affirmed the trial court. The Supreme Court of Ohio dismissed petitioner's appeal.
 
 
 12
 Thereafter, petitioner filed his section 2254 petition alleging that the two written statements made by him to police officers on Monday, November 19, 1979, and Tuesday, November 20, 1979, were made involuntarily and that their admission at trial denied him due process of law. The district court concluded that petitioner's statements were voluntary and admissible.
 
 II.
 
 13
 Petitioner's primary contention is that the written statements of November 19, 1979, and November 20, 1979, were inadmissible. Petitioner contends that his waiver of Miranda rights was made involuntarily and that his subsequent incriminating statements were also given involuntarily. The validity of a waiver of Miranda rights and the voluntariness of a confession are questions of federal law. However, the historical facts relevant to these issues are governed by 28 U.S.C. Sec. 2254(d). Section 2254(d) provides that in any habeas corpus proceeding state court findings of fact made after a full and fair evidentiary hearing are entitled to a presumption of correctness. Sumner v. Mata, 449 U.S. 539, 545-48 (1981); Fowler v. Jago, 683 F.2d 983, 988 (6th Cir. 1982). The burden is upon petitioner 'to establish by convincing evidence that the factual determination by the state court was erroneous.' 28 U.S.C. Sec. 2254(d). See also Sumner, 449 U.S. at 745; Fowler, 683 F.2d at 988. Petitioner has failed to 'establish by convincing evidence' that the factual findings of the Ohio trial court are erroneous, and, therefore, we accept the trial court's findings of fact.
 
 
 14
 To determine whether a waiver of Miranda rights was voluntary, we must look 'into the totality of the circumstances surrounding the interrogation, including age, experience, education, background, intelligence and conduct of the defendant.' United States v. Melanson, 691 F.2d 579, 588 (6th Cir. 1981). Application of these factors to the instant case belies petitioner's contention that the waiver was involuntary. Petitioner was eighteen years of age at the time of his arrest, had completed eleven years of formal schooling, and was not unfamiliar with the judicial system, having previously been committed to the Ohio Youth Commission. More importantly, petitioner failed to indicate any desire to remain silent and declined several opportunities to request the presence of an attorney.
 
 
 15
 Petitioner's assertion that Mr. Timonere used his friendship with the petitioner to induce the waiver of Miranda rights is without support in the record. Petitioner testified that Mr. Timonere advised him that he could not be his lawyer and that he knew Mr. Timonere could not be his attorney. Moreover, Mr. Timonere advised petitioner that if he had anything to hide he should remain quiet and that he could have another attorney if he so desired. Having considered all the circumstances surrounding petitioner's waiver of his Miranda rights, we conclude that the waiver was voluntary.
 
 
 16
 A confession not obtained in violation of Miranda will still be inadmissible if the confession was given involuntarily. United States v. Murphy, 763 F.2d 202, 205 (6th Cir. 1985). Petitioner asserts that during the interrogation Mr. Timonere 'actively represented' both the prosecution and the petitioner. Petitioner argues that Mr. Timonere's representation of conflicting interests deprived petitioner of effective assistance of counsel, and, therefore, the incriminating statements were involuntary. Petitioner's argument is without merit. Mr. Timonere had been elected City Solicitor of Ashtabula, Ohio, but had not taken office at the time of petitioner's trial. The Ashtabula City Solicitor did not have any prosecutorial responsibilities for felony cases brought pursuant to grand jury indictment in Ashtabula County, Ohio. Moreover, Mr. Timonere was not acting as petitioner's counsel, and petitioner unequivocally testified that he knew Mr. Timonere could not represent him.
 
 
 17
 Relying on Massiah v. United States, 377 U.S. 201 (1964), petitioner argues that if Mr. Timonere was not acting as his counsel, he was deprived of his right to the advice of counsel during interrogation. Petitioner further argues that this deprivation rendered the incriminating statement of November 19, 1979, involuntary. Petitioner's reliance on Massiah is misplaced as the right to counsel recognized in Massiah is premised on the Sixth Amendment and does not come into play until judicial proceedings are instituted against the accused. Brewer v. United States, 430 U.S. 387, 398 (1977). Furthermore, petitioner effectively waived his Fifth Amendment right to counsel. Thus, petitioner's right to counsel was not violated.
 
 III.
 
 18
 Accordingly, we AFFIRM the decision of the district court.
 
 
 
 *
 The Honorable George E. Woods, Judge, United States District Court for the Eastern District of Michigan, sitting by designation